# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

NICHOLAS AMAZZALORSO,

    Plaintiff,

    v.

ANDREW SAUL, Commissioner of the
Social Security Administration,

    Defendant.

CAUSE NO.: 2:18-CV-400-TLS

## OPINION AND ORDER

Plaintiff Nicholas Amazzalorso seeks review of the final decision of the Commissioner of
the Social Security Administration denying his application for disability insurance benefits. For
the reasons set forth below, the Court finds that the ALJ's decision is supported by substantial
evidence and Plaintiff has not identified a basis for remand.

## PROCEDURAL BACKGROUND

On May 26, 2015, Plaintiff filed an application for disability insurance benefits, alleging
disability beginning May 15, 2015. AR 175, ECF No. 18. The claim was denied initially and on
reconsideration. *Id.* 86, 91. Plaintiff requested a hearing, which was held before the
Administrative Law Judge (ALJ) on June 21, 2017. *Id.* 36, 94, 98. On August 9, 2017, the ALJ
issued a written decision, finding Plaintiff not disabled. *Id.* 10–19. On October 24, 2018, Plaintiff
filed his Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final
decision. Plaintiff filed an opening brief [ECF No. 23-1], the Commissioner filed a response
brief [ECF No. 25], and Plaintiff filed a reply brief [ECF No. 26].

## THE ALJ'S DECISION

For purposes of disability insurance benefits, a claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 15, 2015, the alleged onset date. AR 12.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). In this case, the ALJ determined that Plaintiff has the severe impairments of lumbar radiculopathy, lumbar spinal stenosis, status post laminectomy syndrome, herniated thoracic disc, and status post cervical fusions. AR 13.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." *Id.* § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id.* § 404.1520(a)(4)(iii), (d). Here, the

ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that he considered Listings 1.04. AR 13.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following limitations: he can stand/walk for four hours during an eight-hour workday; can occasionally operate foot controls bilaterally; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; and can never work at unprotected heights or around moving mechanical parts.

AR 13.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that Plaintiff is unable to perform any past relevant work under 20 C.F.R. § 404.1565. AR 17.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" in the national economy given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that Plaintiff is not disabled because Plaintiff can perform significant jobs in the national economy of mail clerk, inspector, and cashier II. AR 18. The claimant bears the burden of proving steps one through four, whereas the

burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1–3. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that

of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, Plaintiff argues that the ALJ erred at step three by finding that his impairments do not meet Listing 1.04 and that the ALJ erred in formulating the RFC by improperly considering Plaintiff's subjective complaints as well as Plaintiff's then-impending surgery. The Court considers each argument in turn.

### A.    Listing of Impairments

The Listing of Impairments "describes for each of the major body systems impairments that [the agency considers] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). If

the claimant's impairment meets or equals a listed impairment and meets the 12-month duration requirement, the adjudicator will find the claimant disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d); *see also* 20 C.F.R. § 404.1505(a). A claimant "must show that his impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

In this case, the ALJ considered Listing 1.04 and found that "the medical evidence does not adequately establish the motor loss and sensory or reflex loss required by listing 1.04." AR 13. The ALJ further found that "the record fails to establish consistently positive straight leg raise tests, motor loss, or inability to ambulate effectively as defined in 1.00(B)." *Id.* As a result, the ALJ concluded that "the medical evidence of record does not show conditions of the nature, severity or duration contemplated by listing 1.04." *Id.*

Listing 1.04 provides:

1.04 Disorders of the spine (e.g., *herniated nucleus pulposus*, spinal arachnoiditis, *spinal stenosis*, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. *Evidence of nerve root compression* characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, *motor loss* (atrophy with associated muscle weakness or muscle weakness) accompanied by *sensory or reflex loss* and, if there is involvement of the lower back, *positive straight-leg raising test* (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular

> pain and weakness, and resulting in *inability to ambulate effectively, as defined in 1.00B2b.*

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04 (2017) (emphasis added).

First, Plaintiff establishes that he meets the opening paragraph of Listing 1.04 because the ALJ found that he has lumbar radiculopathy, lumbar spinal stenosis, post laminectomy syndrome, herniated thoracic discs, and status post cervical fusions. Although Plaintiff does not specifically identify which of the subparts he meets, it appears from his arguments that Listing 1.04A for nerve root compression and Listing 1.04C for lumbar spinal stenosis are at issue. However, Plaintiff has not shown that he meets all of the requirements of either listing.

By way of background, Plaintiff has a history of back and neck pain and back surgery as a result of injuries he suffered on January 8, 2014, when he was operating a work vehicle that was struck from behind. AR 47–48. He underwent a cervical fusion procedure in February 2014 and an L2–L5 laminectomy in May 2014. *Id.* 392, 408. Plaintiff went back to work in August 2014 for several months and then was terminated by his employer. *Id.* 47–48. He collected unemployment from that time until February 2015. *Id.* 48. He went back to work from February 2015 until May 2015 and has not worked since. *Id.* 48. Plaintiff saw his surgeon, Dr. Chang, again in 2015 following an MRI of the lumbar spine to review the findings and discuss treatment options. *Id.* 371. Plaintiff received steroid injections from Dr. Dasari in July 2015 and August 2015. *Id.* 401–02, 405–08.

Turning to the requirements of the listings, Listing 1.04A requires a disorder of the spine resulting in compromise of the nerve root (including the cauda equina) or the spinal cord as well as (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or

muscle weakness) accompanied by sensory or reflex loss, and (4) positive straight leg raising tests because there is involvement of the lower back. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A. Plaintiff is correct that there is evidence of nerve root compression. An April 20, 2015 MRI, when compared with a January 30, 2014 MRI, indicated that there was a large disc protrusion at the T11-12 level that appeared to produce central stenosis with narrowing of the vertebral canal, which was present on the earlier MRI. AR 372–73. The April 20, 2015 MRI also indicated that the exited L3 nerve may be affected from a more lateral disc bulge. *Id.* 372. The July 2, 2015 procedure note for a steroid injection at Midwest Intervention Spine Specialists indicates a "preprocedure diagnosis" of "lumbar herniated nucleus pulposus" and "status post laminectomy L3-4." *Id.* 389–90. The July 20, 2015 consultative examination report from Dr. Siddiqui included an impression of lower back pain with radiculopathy status post lumbar laminectomy, recent history of L3-4 herniated disc disease, and neck pain and stiffness status post spinal cervical fusion. *Id.* 392–94. In a procedure note dated August 13, 2015, Dr. Dasari included a "preprocedure diagnosis" of "herniated nucleus pulposus L3–4" and "lumbar radiculopathy." *Id.* 400-01.

Plaintiff is also correct that, contrary to the ALJ's finding at step three that the record fails to establish consistently positive straight leg raise tests, the record shows numerous references to positive straight leg tests, which the ALJ later noted in the RFC analysis. *See Id.* 13, 15–16. On September 4, 2015, Dr. Dasari's progress notes indicate that "straight leg raising in sitting position is negative for sciatic tension bilaterally, but causes low back pain." *Id.* 398. The report dated July 20, 2015, from Midwest Clinic shows that straight leg tests are 60 degrees bilaterally and positive for lower back pain. *Id.* 393. An October 5, 2016 progress note from Dr.

Dasari indicates that the straight leg raising test was positive on the left leg, negative on the right. *Id.* 420. The April 11, 2017 progress note from Dr. Dasari indicate that the straight leg raising test was positive on the left causing leg pain and positive on the right causing lower back pain. Plaintiff was positive in the straight leg test in the sitting position of his left leg. *Id.* 409, 415. Although the ALJ's conclusion at step three appears internally inconsistent with the RFC analysis in which the ALJ notes the multiple positive straight leg tests, the error is harmless because Plaintiff has not demonstrated evidence of motor loss required to meet Listing 1.04A. *See, e.g.*, *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010) (discussing harmless error); *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006) (noting that an ALJ's mistake "may be harmless error").

Plaintiff has not shown that he meets Listing 1.04A because he has not identified evidence of motor loss. Plaintiff notes a single reference to left leg numbness on September 3, 2015, with Plaintiff reporting that he "had noticed increasing left lower extremity numbness, specifically his first three left toes" and Dr. Dasari indicating "decreased sensation noted in the left posterior calf and left lateral foot." Pl.'s Br. 10 (citing AR 397–98). Although this record supports *sensory* loss, which is also part of Listing 1.04A, there must be evidence of *motor* loss. Motor loss is defined in the listing as either atrophy with muscle weakness or muscle weakness alone. 20 C.F.R. Pt. 404, Subpt. P., App'x 1 § 1.04A. In the RFC analysis, the ALJ noted repeated findings of full muscle strength. AR 15 (citing AR 393, 398, 416). The Court further notes Dr. Siddiqui's musculoskeletal finding of "no muscles wasting is noticed." *Id.* 393. Therefore, substantial evidence supports the ALJ's conclusion that Plaintiff does not exhibit motor loss as defined by and required to meet Listing 1.04A.

As for Listing 1.04C, one of the required elements, as articulated by the ALJ, is the inability to ambulate effectively as defined in 1.00B2b. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b; *see also* AR 13. The "inability to ambulate effectively" is defined in Section 1.00B of the Listings:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

*Id.* § 1.00B2b(1).

> [E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

*Id.* § 1.00B2b(2).

Plaintiff does not recite or even reference this regulatory definition nor does Plaintiff attempt to show how he meets this requirement. Rather, in his reply brief, Plaintiff notes that in an earlier section of his opening brief he had noted the new symptom of pulling pain on the right inner thigh and that for the two months prior to the hearing he had increased pain that affected his balance and resulted in numbness in his leg. Pl.'s Reply 5, ECF No. 26 (citing Pl.'s Br. 9 (citing AR 408–11)). However, Plaintiff has not shown how these instances of pain demonstrate that he meets the regulatory definition of "inability to ambulate effectively." The ALJ noted in the RFC analysis that treatment records showed that Plaintiff could "walk on heels and toes without difficulty and demonstrated normal gait," "was able to heel and toe stand," had the

"ability to heel and toe walk with good strength," and "could heel walk." AR 15–16 (citing 393, 398, 409, 416). Plaintiff has not identified evidence contrary to the ALJ's finding that Plaintiff does not meet Listing 1.04C.

Accordingly, Plaintiff has not shown that he meets or equals a listing or that the ALJ erred in his step three finding. Because substantial evidence of record supports the ALJ's step three finding, remand is not warranted on this basis.

## B.     Residual Functional Capacity

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3.

The relevant evidence includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must

consider all allegations of physical and mental limitations or restrictions and make every

reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.*

      Plaintiff argues that the ALJ failed to properly consider Plaintiff's subjective complaints

and used illogical reasoning regarding Plaintiff's impending surgery.

*1.    Subjective Complaints*

      Plaintiff argues that the ALJ erred in concluding that Plaintiff's statements concerning the

intensity, persistence, and limiting effects of his symptoms were only partially consistent with

the medical evidence and other evidence of record. The ALJ must consider a claimant's

statements about his symptoms, such as pain, and how the symptoms affect his daily life and

ability to work. *See* 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25,

2017).[1] Subjective allegations of disabling symptoms alone cannot support a finding of

disability. SSR 16-3p, 2017 WL 5180304, at *2. The ALJ must weigh the claimant's subjective

complaints, the relevant objective medical evidence, and any other evidence of the following

factors:

    (1)      The individual's daily activities;
    (2)      Location, duration, frequency, and intensity of pain or other symptoms;
    (3)      Precipitating and aggravating factors;
    (4)      Type, dosage, effectiveness, and side effects of any medication;
    (5)      Treatment, other than medication, for relief of pain or other symptoms;
    (6)      Other measures taken to relieve pain or other symptoms;
    (7)      Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3).

---

[1] Social Security Ruling 16-3p, revised on October 25, 2017, was initially effective as of March 28, 2016, and governs the ALJ's August 9, 2017 decision in this case. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016).

In this case, the ALJ followed the correct steps, considering the factors set forth in 20 C.F.R. § 404.1529(c)(3). The ALJ began by accurately reciting Plaintiff's testimony that he experienced chronic neck and low back pain, with reduced range of motion and numbness in his left arm, and had recent problems with balance. AR 14; *see id.* 48, 51. The ALJ then recounted Plaintiff's testimony that he had problems with postural movements, could lift no more than twenty pounds, could stand for twenty minutes at a time, and had to lie down three hours each day. *Id.* 14; *see id.* 54–56. The ALJ discussed Plaintiff's testimony that he takes Tylenol with codeine on a less than daily basis, muscle relaxers, and ibuprofen and that Plaintiff received some relief from epidural injections. *Id.* 14; *see id.* 49–50, 53. The ALJ noted that Plaintiff testified that his daily activities were generally limited to self-care and getting comfortable, although Plaintiff also testified to driving 40 minutes to the hearing without stopping. *Id.* 14; *see id.* AR 51, 57.

The ALJ then found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms he alleged, Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were only partially consistent with the medical and other evidence of record. *Id.* 14. The ALJ reasoned that the medical evidence showed that Plaintiff had physical impairments that would interfere with more than light level lifting or prolonged standing or walking, would reduce his postural activities, and would require avoidance of certain environmental conditions. *Id.*

In support, the ALJ discussed the underlying evidence at length. The ALJ began with Plaintiff's cervical fusion in February 2014 and L2-L5 laminectomy in May 2014. *Id.* (citing AR 392). An April 2015 MRI showed a large T11-12 disc protrusion with central stenosis, L3-4

lateral recess and bilateral foraminal narrowing worse on the left, and L4-5 bilateral foraminal stenosis. *Id.* (citing AR 423-24). That same month during a follow up with orthopedic surgeon Dr. Chang, Plaintiff opted to hold off for the time being on any treatment for lower back and left leg pain. *Id.* 14–15 (citing AR 371).

The ALJ noted that, in July 2015, consultative examiner Dr. Siddiqui noted that Plaintiff showed mild distress getting on and off the examination table, difficulty squatting, tenderness and decreased range of motion in the lumbar and cervical spines, positive straight leg raise bilaterally, and decreased sensation to soft touch over the lower lumbar vertebral area. AR 15 (citing AR 393). However, the ALJ noted that Plaintiff also had normal gait, was able to walk on and his heels and toes without difficulty, and had full muscle and grip strength bilaterally. *Id.* (citing AR 393). The following month, Plaintiff reported 50–75% pain relief from an epidural steroid injection and improvement in his overall functioning. *Id*. (citing AR 402).

The ALJ then discussed the evidence that, in September 2015, Plaintiff reported having gotten 25–50% pain relief from another set of injections. *Id.* (citing AR 397). Plaintiff had decreased lumbar range of motion and decreased sensation in parts of his left leg, straight leg raise tests negative for sciatic tension, and full motor strength. *Id.* (citing AR 397–99). In October 2015, he discussed surgery but decided to continue with injections. *Id.* (citing AR 448).

The ALJ recognized that, in October 2016, Plaintiff reported that his May 2016 epidural injection had been the most successful at pain relief thus far (75% relief), and he received another set of injections. *Id.* (citing AR 418–20). The next month, he reported 50–75% relief from his most recent injection and medications. *Id*. (citing AR 416). Physical examination

revealed lumbar tenderness to palpation and decreased range of motion but a negative straight leg raise test and full strength in both legs. *Id.* (citing AR 416).

The ALJ then discussed the April 2017 record showing that Plaintiff had positive straight leg raising tests and was unable to toe walk but could heel walk. *Id.* 15–16 (citing AR 409–10). The next month, an MRI showed moderate central stenosis at T11-12 and at L4-5. *Id.* 16 (citing AR 425–26). Plaintiff elected to proceed with surgery in light of persistent symptoms. *Id.* (citing AR 437). The ALJ also discussed the opinion evidence of record. *Id.*

In light of all of this evidence, the ALJ acknowledged that Plaintiff had physical impairments that may limit his activity. *Id.* However, the ALJ concluded that the evidence showed that, in general, Plaintiff could perform a reduced range of light work. *Id.* 17. This included the limitations incorporated in the RFC that Plaintiff could stand and walk for four hours during the workday; could occasionally operate foot controls bilaterally; could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and could never climb ladders, ropes, or scaffolds or work at unprotected heights or around moving mechanical parts. *Id.* 13.

In his brief, Plaintiff makes only one argument in support of his contention that the ALJ did not properly consider his subjective complaints. Plaintiff first sets out the following testimony that he gave at the hearing. *See* Pl.'s Br. 11. He had a hard time putting his head back and that it causes his left arm to fall asleep for four or five hours at a time. AR 48. He loses his grip in his left hand and that his legs start bothering him, affecting his balance. AR 49. He has leg numbness, which affects his balance, and his foot does not want to cooperate. AR 51. His balance problems started to get worse in the two months prior to the hearing. AR 52. He has

problems standing in that he has to constantly lean to one side. AR 55. And, he had to alternate sitting, standing, and lying down during the day. AR 56.

Then, Plaintiff asserts, without analysis, that "his complaints as to how long he can sit or stand at one time are supported by Dr. Siddiqui's report dated July 20, 2015." Pl.'s Br. 11 (citing AR 392). A review of Dr. Siddiqui's consultative examination report shows Plaintiff's report that, due to his back pain, he has difficulty sitting at one place for more than twenty minutes and has difficulty standing at one place for more than thirty minutes. AR 392. Thus, Plaintiff's hearing testimony is consistent with his reports to Dr. Siddiqui; however, Plaintiff does not identify any aspect of Dr. Siddiqui's examination findings that either support Plaintiff's subjective reports or do not support the ALJ's analysis. In his brief, Plaintiff also asserts generally, with no analysis of any records that, "[a]ll of these symptoms as described by [Plaintiff] are in the medical records of Dr. Dasari and the Midwest International Spine Specialist as stated above." *Id*. In making these arguments, Plaintiff is essentially asking the Court to reweigh the evidence and come to a different conclusion. This is not the standard of review for this Court. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003))).

The ALJ followed the requirements of SSR 16-03p in thoroughly reviewing the evidence and considering Plaintiff's subjective complaints. Remand is not required on this issue.

2. *Impending Surgery*

Finally, Plaintiff argues that the ALJ's consideration of Plaintiff's impending surgery is illogical. In his decision, the ALJ recognized that Plaintiff would be undergoing additional surgery in the near future. AR 16. In considering that fact, the ALJ reasoned,

> [T]he vast majority of the objective medical evidence since the alleged onset date shows overall moderate clinical findings and fairly conservative management, with medications and injections, with adequate relief therefrom and simply does not establish physiological abnormalities which would limit the claimant's daily activities to the disabling degree alleged or preclude the claimant from performing at the residual functional capacity as assessed above.

*Id*. The ALJ then found that, "[w]hile the impending surgery will result in temporary restrictions below this capacity, the record suggests that the claimant will improve within twelve months to the residual functional capacity expresse[d] herein." *Id*.

Plaintiff contends that the ALJ's conclusion is illogical because Plaintiff would not have required surgery if his condition was not serious at the time of the hearing. Pl.'s Br. 13. However, as set forth in the previous section, Plaintiff has offered no analysis of the medical evidence of record to support any greater functional limitations at the time of the hearing than those imposed by the ALJ. More importantly, Plaintiff fails to acknowledge the ALJ's substantial discussion of the medical evidence of record that supports the RFC. Plaintiff has not shown how the fact that he underwent surgery undermines the ALJ's RFC determination. Nor does Plaintiff identify any aspect of the RFC that he is unable to perform. Again, Plaintiff is improperly asking the Court to reweigh the evidence. Remand is not required on this basis.

**CONCLUSION**

For the reasons stated above, the Court DENIES the relief sought in Plaintiff's

Memorandum of Law in Support of Plaintiff's Complaint [ECF No. 23-1]. The Court AFFIRMS

the decision of the Commissioner.

SO ORDERED on March 31, 2020.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT